IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01910-KAS

TYLER HIMELSTIEB,

    Plaintiff,

v.

MENTAL HEALTH CLINICIAN BRANDENBURG;
PRISON NURSE TERRY MARTINEZ,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion for Summary Judgment on the Issue of Exhaustion** [#75] (the "Motion").[1] Plaintiff, who is proceeding as a pro se litigant,[2] filed a Response [#82] in opposition to the Motion [#75], and Defendant filed a Reply [#84].

Plaintiff filed a second Brief in Opposition [to] Summary Judgment [#90] ("Surreply"), which the Court deemed a surreply filed without leave of Court. *See Order*

---

[1] "[#75]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[#93] at 9. The Court warned Plaintiff that the Surreply [#90] would be stricken unless he filed a motion explaining why such a surreply was necessary. *Id*. On September 7, 2023, Plaintiff requested a 30-45 day "extension of time", which the Court granted and set a deadline of October 11, 2023, for Plaintiff to explain why a surreply was necessary. *Motion for Extension of Time* [#94]; *Minute Order* [#95] at 1. Plaintiff did not file an explanation, but on October 30, 2023, he filed another motion requesting an extension—again, the Court granted it and set a new deadline of November 30, 2023, to explain why a surreply was necessary. *Motion for Extension of Time* [#98]; *Minute Order* [#99]. Again, Plaintiff did not file an explanation. Accordingly, the Court declines to consider Plaintiff's Surreply [#90]. *See, e.g.*, *Adams v. Martinez*, No. 22-1425, 2023 WL 5273771, at *3 (10th Cir. Aug. 16, 2023) (finding "no abuse of discretion in the district court's declining to consider [a] surreply") (citing *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005)); *Pirnie v. Key Energy Servs., LLC*, No. 08-cv-01256-CMA-KMT, 2009 WL 1386997, at *1 (D. Colo. May 15, 2009) (stating that "a surreply brief is necessary only if the reply brief raises new material that was not included in the original motion").[3]

The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Motion [#75] is **GRANTED**.[4]

---

[3] As for the grievances Plaintiff attached to his Surreply [#90], these grievances were already attached to Defendants' Motion [#75]. *Surreply* [#90] at 6-7 (both pages court stamped with this case number and "Document 75-2"). Therefore, the Court has already considered them in connection with Defendants' Motion [#75].

[4] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consents* [#68, #71]; *Order of Reference* [#69]; *Reassigning Magistrate Judge* [#91].

## I. Background

**A.   Procedural History**

Plaintiff filed this 42 U.S.C. § 1983 action on July 14, 2021. *Compl.* [#1]. In the operative Amended Complaint [#17], Plaintiff alleges that on July 24, 2020, he was transferred to the San Carlos Correctional Facility ("SCCF"), a Colorado Department of Corrections ("CDOC") facility. *Am. Compl.* [#17] at 4. He alleges that he was not given his prescribed psychiatric medication that morning before being transferred, and that once he was transferred to SCCF, Defendant Martinez, a prison nurse, refused to provide him with his medication. *Id.* He claims that because Defendant Martinez did not provide him his prescribed medication, he began banging his head uncontrollably, suffering injury. *Id.* at 5. Plaintiff asserts that he also met with Defendant Brandenburg, a mental health clinician, later that day, who also did not provide him his prescribed medication. *Id.* He asserts that Defendants violated his Eighth and Fourteenth Amendment rights. *Id.* at 8-9.

Defendants now move for summary judgment, arguing that Plaintiff failed to exhaust administrative remedies before filing suit. *Motion* [#75] at 8-12.

**B.   Undisputed Material Facts**

The Court finds the following undisputed material facts.[5]  On July 24, 2020, Plaintiff

---

[5] While many of these facts come from Defendant's Statement of Undisputed Facts, the Court did not accept as undisputed facts which were not supported by citations to materials in the record. *Motion* [#75] at 2-5. The Court also reviewed the grievances Plaintiff submitted in Response [#82] because Defendants did not dispute their authenticity in Reply [#84]. However, the Court did not accept Defendants' and declarant DeCesaro's legal conclusions couched as fact, such as the assertion that "Plaintiff did not exhaust administrative remedies prior to filing this complaint." *Motion* [#75] at 5; Decl. of DeCesaro [#75-2] at ¶ 21 (same); *see Skrzypczak v. Roman Cath. Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010) (rejecting affidavits that "state[d], in the affiant's opinion, the legal conclusion the court should reach").

was an inmate at SCCF. *Movement History* [#75-1] at 1. Plaintiff was incarcerated at the time he filed his Complaint. *Id.* (indicating Plaintiff was at SCCF until he was paroled September 14, 2022); *Compl.* [#1] (filed July 14, 2021). CDOC offers inmates administrative remedies through a four-step process, with the first step being an informal opportunity to engage in constructive dialogue. *Decl. of DeCesaro* [#75-2] at ¶ 4. The formalized three-step process is set forth in Administrative Regulation ("AR") 850-04. *Id.* at ¶ 5; pp. 6-22. AR 850-04 requires inmates to first attempt to resolve any issue or complaint by filing a Step I grievance, which must be filed within 30 calendar days from the date the inmate knew or should have known of the facts giving rise to the grievance. *Id.* at ¶ 6; pp. 6, 12. If an inmate is dissatisfied with the result of a Step I grievance, he must file a Step II grievance form concerning the issue, within five days of receiving a written response to his Step I grievance. *Id.* at ¶ 7; p. 12 ("Offenders who wish to proceed to the next step in the grievance process must submit their written grievance within five calendar days of receiving the written response to the previous step."). Similarly, if an inmate is dissatisfied with the result of a Step II grievance, he must submit a Step III grievance within five days of receiving a response to the Step II grievance. *Id.* at ¶ 7; p. 12 The Step III grievance is the final step in CDOC's grievance process. *Id.* at ¶ 8.

Here, Plaintiff filed a Step I grievance on June 18, 2020, raising complaints about the adequacy of his mental health treatment. *Id.* at ¶ 18; p. 23. The Court notes that this was more than a month before the July 24, 2020, date of the incident alleged in Plaintiff's operative complaint. *Am. Compl.* [#17] at 4. The Step I grievance is very difficult to read, but it does not appear to refer to any misconduct by these Defendants. *Decl. of DeCesaro*

4

[#75-2] at ¶ 18, p. 23. The Court also notes that Plaintiff signed his Step I grievance acknowledging receipt of a response on July 17, 2020—a week before the alleged incident. *Id.* at p. 23.

Plaintiff filed a Step II grievance on August 6, 2020, in connection with his complaints about mental health treatment. *Id.* at p. 24. In it, he accuses three other personnel, Dr. Johnson, Dr. Garvy, and Dr. Tarmin, of refusing to give him sufficient care. *Id.* at ¶ 12, p. 24. The current Defendants are not mentioned in the Step II grievance. *Id.* at p. 24.

Plaintiff never filed a Step III grievance in connection with these two grievances, nor did he file any other grievances complaining of inadequate mental healthcare in or around July 2020. *Id.* at ¶¶ 19-20 (stating that after "thoroughly search[ing] the CDOC's grievance database [Mr. DeCesaro] was unable to locate any other grievance or series of grievances filed by Himelsteib discussing allegations of improper or inadequate provision of mental health care in or around July 2020").[6]

On July 31, 2020, Plaintiff filed a separate Step I grievance against Defendant Brandenburg, accusing her of "abusing [the] use of 4-point bed restraints." *Response* [#82] at 3. He referenced a **July** 24, 2020 incident in which he "hit [his] head badly and went to the hospital" after he "hit [his] head at two episodes just minutes apart," but does not accuse Defendant Brandenburg or Defendant Martinez of wrongdoing in connection

---

[6] The Court notes that the declarant's failure to find a record that would be regularly kept in the course of regularly conducted activity may be admissible "to prove that the matter did not occur or exist" unless the opponent shows "that the possible source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(7). Plaintiff made no such showing. *See generally Response* [#82].

with that incident. *Id.* The response indicated that Plaintiff was "informed that to reduce the risk of harm [he] would be placed on clinical four-point restraint bed, to which [he] expressed understanding for this decision." *Id.*

On October 20, 2020, Plaintiff followed up with a Step II grievance against Defendant Brandenburg, again accusing her of abusing the use of four-point restraints. *Id.* at 4. Finally, on February 1, 2021, he followed up with a Step III grievance against Defendant Brandenburg, again accusing her of abusing the use of four-point restraints. *Id.* at 5. The Step III grievance was denied because Plaintiff had not requested "allowable relief" under the administrative regulations. *Id.* Defendant Martinez is not mentioned in any of these grievances. *Id.* at 3-5.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

## III. Analysis

Defendants argue that they are entitled to summary judgment because Plaintiff

failed to exhaust administrative remedies relating to his claim that Defendants denied him his prescribed psychiatric medication despite his requests. *Motion* [#75] at 1-2. Because failure to exhaust is an affirmative defense, Defendants bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 212 (2007).

### A.   The Court's Practice Standards and Order to Show Cause

As an initial matter, Plaintiff's Response [#82] did not comply with the Court's Civil Motions Practice Standards [#80] or the Court's Order to Show Cause [#81]. On May 24, 2023, the Court issued an Order to Show Cause because Plaintiff had not filed a response to the summary judgment motion filed three months earlier. *Order to Show Cause* [#81] at 1. The Court allowed Plaintiff to submit a Response by June 12, 2023, and told him how his response should address the facts asserted in the Motion [#75]:

> IT IS FURTHER **ORDERED** that Plaintiff's Response to the Motion for Summary Judgment for Failure to Exhaust [#52] must state whether each of the facts in the Statement of Undisputed Facts is "disputed" or "undisputed." If a fact is disputed, Plaintiff must state why it is disputed and set forth the evidence that supports his position that the fact is disputed. Also, Plaintiff shall set forth any additional material fact which he contends is undisputed or which he contends shows summary judgment should not be entered in Defendants' favor, along with evidence in support of such fact. Citation to the evidence in support of each material fact must include reference to documents (which should be attached to Plaintiff's response as exhibits) by title, page, and paragraph or line numbers. **Failure to comply with these requirements means that Defendants' facts will be deemed undisputed.**

*Order to Show Cause* [#81] at 2 (emphasis in original). This Order echoes the Court's Civil Motions Practice Standards, which requires a "Response to Movant's Material Facts" section "admitting or denying the asserted material facts . . . in paragraphs numbered to correspond to movant's paragraph numbering." *Practice Standards* [#80] at

7

3. Any denial must be accompanied by a brief factual explanation and specific reference to admissible evidence supporting the denial. *Id.*

Plaintiff states that he "was surprised by the claims that [he hasn't] exhausted the grievance process because with just a brief look into the case it's obvious that [he has] done so completely to the best of [his] ability." *Response* [#82] at 1. He also attached a set of grievances to his Response. *Id.* at 3-5. However, he did not "state whether each of the facts in the Statement of Undisputed Facts is 'disputed' or 'undisputed.'" *Order to Show Cause* [#81] at 2. He fails to "admit[ ] or deny[ ] the asserted material facts set forth by [Defendant]," much less in paragraphs corresponding to Defendants' paragraph numbering. *Practice Standards* [#80] at 3.

The Court warned him that failure to comply with its Order would mean that Defendants' facts would be deemed undisputed. *Order to Show Cause* [#81] at 2. The Tenth Circuit has repeatedly insisted that pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (collecting cases); *see also Beard v. Banks*, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in defendant's statement of undisputed facts, [the plaintiff] is deemed to have admitted the validity of the facts.").

Plaintiff's failure to specifically dispute or admit Defendants' proffered facts provides sufficient basis to enter summary judgment in favor of Defendants—especially in light of the Court's order specifically warning him of the consequences of failing to do so. *Order to Show Cause* [#81] at 2. However, the Court is cognizant that "in granting summary judgment based upon a failure to respond, a district court must still determine

that summary judgment is appropriate." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1254-55 (10th Cir. 2017) (citing Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment). Thus, the Court proceeds to consider the motion on the merits, based on the factual record discussed above. *See* Fed. R. Civ. P. 56(e)(4) advisory committee notes to 2010 amendment ("the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant").

**B.   The Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available administrative remedies before he can challenge prison conditions in federal court. *Woodford v. Ngo*, 548 U.S. 81, 81 (2006) (citing 42 U.S.C. § 1997e(a)). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate may satisfy this exhaustion requirement by "properly following all of the steps laid out in the prison system's grievance procedure," including meeting deadlines and complying with other critical procedural rules.[7] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford*, 548 U.S. at 90); *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing

---

[7] The primary exception to the exhaustion requirement is where the administrative remedies are not "available" to the prisoner, such as where "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy[.]" *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). An exception may also be made where the grievance procedure is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands[.]" *Ross v. Blake*, 578 U.S. 632, 644 (2016) (citations omitted).

a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). Importantly, a court must examine whether the exhaustion requirement is satisfied before examining the merits of a plaintiff's claims. *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted); *Woodford*, 548 U.S. at 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

Lack of exhaustion is an affirmative defense that must be raised in response to a prisoner's claim. *Jones*, 549 U.S. at 212. "Typically, a conclusion that a plaintiff failed to exhaust [his] administrative remedies results in a dismissal without prejudice because '[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw.'" *Bivens v. McGaugh*, No. 21-cv-00783-PAB-NYW, 2022 WL 672481, at *7 n.5 (D. Colo. Mar. 7, 2022) (quoting *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212-13 (10th Cir. 2003), *abrogated on other grounds by Jones*, 549 U.S. 199); *Dawson v. Werholtz*, No. 07-3165, 2008 WL 1773866, at *1 n.1 (D. Kan. Apr. 16, 2008) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (stating that dismissal of unexhausted claims on summary judgment should be without prejudice)). A dismissal for failure to exhaust must be without prejudice, even if the time frame for recourse has elapsed. *See, e.g.*, *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139-40 (10th Cir. 2005) (affirming dismissal of prisoner's claim on exhaustion grounds but remanding for the district court "to either modify its opinion to specify that dismissal is without prejudice, or make a determination on the merits within its permissible scope to do so"—even though

"the time frame for recourse to administrative remedies has now probably expired").

**C.     Plaintiff's Grievances**

Here, the CDOC provides inmates a three-step grievance process under AR 850-04. *See Decl. of DeCesaro* [#75-2] at ¶¶ 4-5, *id.* at pp. 6-22. At each step, the inmate must complete and submit a grievance form, then wait a period of time to receive a response from a CDOC official. *Id.* at pp. 7-12 (describing the process of filing, responding, timing, and substance of grievances). Filing a Step III grievance is the final step of the grievance process. *Id.* at ¶ 8. Because this grievance process has three steps, an inmate who stops after filing a Step I or Step II grievance has not exhausted his administrative remedies. *Jernigan*, 304 F.3d at 1032 ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). The record shows that Plaintiff is aware of the three-step grievance process, as he filed Step I, Step II, and Step III grievances relating to four-point restraints. *Response* [#82] at 3-5.

Here, while Plaintiff filed two sets of grievances, neither are related to the alleged July 24, 2020, incident. *Response* [#82] at 3-5 (grievances all relating to four-point restraints, none of which mention Defendant Martinez or access to medication); *Decl. of DeCesaro* [#75-2] at pp. 23-24 (Step I grievance *preceding* the July 24, 2020 incident, and subsequent Step II grievance mentioning neither Defendant). Of course, for Plaintiff to show he has exhausted administrative remedies, he must show that the grievances he filed are actually related to the alleged incident. *See, e.g., Gorton v. Williams*, 309 F. App'x 274, 275 (10th Cir. 2009) (holding that, "in light of [d]efendant's evidence that [p]laintiff

11

submitted no grievances *related to his claims in this case*, the court's grant of summary judgment to [d]efendant for failure to exhaust was appropriate") (emphasis added).

The undisputed evidence shows that Plaintiff failed to exhaust his June 18, 2020, grievance pertaining to mental healthcare, because he stopped after Step II. *Decl. of DeCesaro* [#75-2] at ¶ 19, pp. 23-24. Plaintiff does not dispute this in his response. *See generally Response* [#82]. Moreover, that grievance is unrelated to the claims asserted in the Complaint [#17], as it preceded the July 24, 2020 incident. Even if the Court were to construe it as somehow pertinent to Plaintiff's claims, however, the undisputed evidence shows that Plaintiff never followed up with a Step III grievance. *Decl. of DeCesaro* [#75-2] at ¶¶ 19-20. Plaintiff thus failed to exhaust administrative remedies relating to the June 18, 2020 grievance (and relating to his claims asserted against Defendants Brandenburg and Martinez, for that matter). *Jernigan*, 304 F.3d at 1032.

The undisputed evidence also shows that Plaintiff pursued all three grievance-process steps in connection with July 31, 2020 grievance—but this grievance is *unrelated* to the conduct alleged in the Amended Complaint. The July 31, 2020 grievance accused Defendant Brandenburg of "abusing [the] use of 4-point bed restraints" but did not mention Defendant Martinez at all or the withholding of psychiatric medication. *Response* [#82] at 3. It mentioned the July 24, 2020 incident, in which he "hit [his] head badly and went to the hospital" in "two episodes just minutes apart," but this grievance does not accuse Defendant Brandenburg or Defendant Martinez of wrongdoing in connection with *that incident*. *Id.* Plaintiff followed up with a Step II grievance against Defendant Brandenburg, again accusing her of abusing the use of four-point restraints. *Id.* at 4.

Finally, he followed up with a Step III grievance against Defendant Brandenburg, again accusing her of abusing the use of four-point restraints. *Id.* at 5. The Step III grievance was denied because Plaintiff had not requested "allowable relief" under the administrative regulations. *Id.*

The Court need not decide whether Plaintiff's Step III grievance was procedurally defective or whether he exhausted his administrative remedies in connection with the July 31, 2020 grievance because that grievance plainly concerns matters other than what is alleged in the Amended Complaint [#17]. That grievance concerns the use of four-point restraints, not the withholding of prescribed psychiatric medication. There are no allegations about the use of four-point restraints in the operative complaint. *See generally Am. Compl.* [#17].[8] Plaintiff has not exhausted administrative remedies *relative to the claims in his operative complaint*.

The undisputed facts show that Plaintiff submitted no grievances related to the July 24, 2020 incident, which is the basis of his claims in this case. The undisputed facts also show that Plaintiff failed to exhaust his June 18, 2020 grievance about his mental health

---

[8] The Court acknowledges that Plaintiff is now seeking to amend his Complaint to include allegations about the use of four-point restraints. *See Proposed Second Am. Compl.* [#101] at 7-9. However, as the Court previously noted, these allegations are not new—it was Plaintiff who removed them from his first Amended Complaint. *Order* [#83] ("[T]he First Amended Complaint filed on October 18, 2021, which is the operative complaint in this case, reasserted [Plaintiff's] claims related to the denial of prescribed psychotropic medications and alleged resulting injuries but omitted the claims related to Plaintiff's placement in four-point restraints[.]") (citing *Am. Compl.* [#17] at 4-9). Moreover, Plaintiff waited until one week after Defendant's Motion for Summary Judgment was fully briefed before seeking to amend. *Motion* [#75] (filed Feb. 7, 2023); *Reply* [#84] (filed June 22, 2023); *Motion for Leave to File Second Amended Complaint* [#86] (filed June 29, 2023). The Court already denied Plaintiff leave to amend based on undue delay and prejudice to Defendants, because it appeared Plaintiff was trying to make his complaint a "moving target" to avoid summary judgment. *Order* [#83] at 7-9 (denying leave to amend). Plaintiff's renewed motion to amend does not change the Court's decision on summary judgment.

treatment in general because he did not file a Step III grievance. Accordingly, Defendants are entitled to summary judgment for failure to exhaust, and their Motion [#75] is **granted**. *Gorton*, 309 F. App'x at 275.

D.    **Plaintiff's Updated Motion to Amend [#104]**

Finally, the Court notes that Plaintiff requests leave to amend his complaint to include allegations about the unlawful use of four-point restraints. *See Updated Motion to Amend* [#104] at 11-12. However, Plaintiff had previously moved to amend to include these same allegations. *Motion for Leave to File Second Amended Complaint* [#86]. The Court denied leave to amend on the basis of undue delay and unfair prejudice to Defendants. *See Order* [#93] at 3-9. The Court pointed out that, while Plaintiff raised the four-point restraints in his initial Complaint [#1], he decided to drop those allegations from his First Amended Complaint [#17], focusing only on the denial of psychotropic medications. *Id.* at 6. Moreover, the Court noted that Plaintiff had waited five months after the Defendants filed the subject Motion [#75] before he sought to amend, and granting leave to amend would prejudice Defendants by mooting the subject Motion [#75] and requiring new dispositive motions briefing. *Id.* at 7-8.

Plaintiff's Updated Motion to Amend [#104] is, more accurately, a motion to reconsider an interlocutory order. Plaintiff discusses the Court's Order [#93] at length, challenging the bases for the Court's decision. *See Updated Motion to Amend* [#104] at 2-4 (disputing that Plaintiff was trying to circumvent summary judgment, that he unduly delayed requesting amendment, and that Defendants would be prejudiced). He seeks to amend his complaint to allege the same four-point restraint allegations as before. *Id.* at

11-12. He does not provide any new evidence in support of this argument, and the Court construes the Updated Motion to Amend [#104] as a motion to reconsider its interlocutory Order [#93] which denied him leave to amend.

"[The] district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether." *United States v. Loera*, 182 F. Supp. 3d 1173, 1206 (D.N.M. 2016). A party moving for reconsideration "faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence." *Id.* at 1207.

The Court does not find that Plaintiff has presented any new facts or any argument which rebuts or weakens the discussion or analysis it presented in the Order [#93]. The Court's analysis was thorough, and the Court incorporates its prior discussion of leave to amend herein. *See Order* [#93] at 3-9. To the extent Plaintiff asks the Court to reconsider the Order [#93] and allow amendment, the request is **denied**.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#75] is **GRANTED**.

IT IS FURTHER **ORDERED** that Plaintiff's Motion for Settlement Conference [#100] and his Motion to Amend [#101] are **DENIED AS MOOT**.

IT IS FURTHER **ORDERED** that Plaintiff's Motion to Update Plaintiff's Address of Record [#103] is **DENIED AS MOOT** because the Clerk of Court has already updated Plaintiff's address in the ECF system, so no further action is needed.

IT IS FURTHER **ORDERED** that Plaintiff's Updated Motion to Amend Complaint [#104] is **DENIED**.

IT IS FURTHER **ORDERED** that this case be **DISMISSED WITHOUT PREJUDICE**.[9] The Clerk of Court is directed to **CLOSE** this case.

Dated:   March 29, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

[9] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139-40 (10th Cir. 2005) (where the Court only decides the exhaustion issue, it must "either . . . specify that the dismissal is without prejudice, or make a determination on the merits within its permissible scope to do so" even if "the time frame for recourse to administrative remedies has now probably expired").